WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-16-08085-001-PCT-GMS |
|      Plaintiff, | **ORDER** |
| v. | |
| Brandyn Paul Blatchford, | |
|      Defendant. | |

Pending before the Court is Defendant Brandyn Blatchford's Motion to Suppress Certain Statements and Evidence, (Doc. 42). For the following reasons, the Court grants and denies the motion in part.

## BACKGROUND

On the evening of April 5, 2016, Sergeant Curtis of the Navajo Police Department identified a victim of a violent assault, RW, at Fort Defiance Indian Hospital.[1] RW had sustained significant injuries to his head. He was brought to the hospital by two friends in a pick-up truck. Sergeant Curtis was joined by Officer Toddy and eventually the pair located the friends that brought RW to the hospital: Ronald Cecil and Melissa Nez.

Later that evening, the officers arrived at the scene where the incident allegedly occurred and began to try to locate a suspect. The officers interviewed Giordano Cecil, Amanda Nez, Veronica Begay, and others that had information regarding the incident.

---

[1] The facts presented in this order are largely taken from police reports and the parties' briefings, and are currently uncontested.

Following these interviews, the officers determined that Brandyn Blatchford ("Blatchford") was the suspected perpetrator of the assault. Blatchford had allegedly spent the evening drinking and socializing with RW, and attacked him after becoming angry with him for refusing to give Blatchford the keys to a red Chevrolet Cavalier. At least one witness claimed that he observed Blatchford beat RW with a hammer before leaving with the keys to the vehicle. Officers were also informed that Blatchford lived with his grandmother in a nearby trailer.

Officers arrived at the trailer at roughly 2:45 in the morning. They did not obtain a warrant prior to their arrival. Sergeant Curtis knocked on the front door while Officer Toddy secured the area and covered the back door. While waiting for a response to the knock, Officer Toddy observed a red car under a tarp. He lifted the tarp, and noticed that the car was a red Chevrolet Cavalier. He also noted that there was a bandana as well as a hammer in plain view on the front seat of the vehicle. At no point did Officer Toddy enter the vehicle.

Blatchford's grandmother[2] answered the door, and gave consent for the home to be searched. She claimed that Blatchford was not home. The police entered the premises, and discovered Blatchford sleeping in one of the back bedrooms. Blatchford confirmed that he was Brandyn Blatchford and the officers handcuffed him. Blatchford was dressed in his boxer shorts at the time. He was handcuffed prior to being able to dress himself. The officers noticed some clothing lying near the bed and brought it with them into the living room at the same time.[3] The officers brought Blatchford into the living room for approximately five minutes, and then subsequently took him to the detention center. At some point during this time, the officers questioned Blatchford

---

[2] It was subsequently revealed that Blatchford's grandmother suffers from dementia, although there is no evidence that the officers knew this at the time of the incident.

[3] From the officer's testimony, this clothing also appeared to match the description of the alleged assailant's outfit during the attack on RW.

about the red Chevrolet Cavalier behind the home. Blatchford claimed he bought it at a flea market.

The officers claim that the clothing was removed from Blatchford's bedroom to ensure that he would have something to wear if he was released that evening. They also testified that the clothing was consistent with the description that witnesses had earlier given of the clothes Blatchford was wearing at the time of the incident. The officers checked the pockets of the pants that they obtained from the bedroom. The pockets contained Blatchford's identification as well as keys to the Cavalier. Blatchford was subsequently transported to a detention facility. There is no evidence that Blatchford was given the opportunity to change into the clothing the officers obtained on the scene.

## DISCUSSION

### A. Blatchford's Statements Regarding the Red Chevrolet Cavalier

Once an individual is "in custody or otherwise deprived of his freedom of action in any significant way," he may not be interrogated by the authorities until he receives *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). Whether an individual is in custody for the purposes of triggering his right to hearing his *Miranda* warnings is a fact intensive inquiry, and may be determined by considering "the language used by the officer to summon the individual, the extent to which he or she is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention and the degree of pressure applied to detain the individual." *United States v. Bautista*, 684 F.2d 1286, 1292 (9th Cir. 1982) (quoting *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981)); *see also Florida v. Bostick,* 501 U.S. 429, 437 (1991) (defining a seizure of an individual under the Fourth Amendment as occurring when "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." (internal quotation and citation omitted)). An individual need not be formally arrested to be entitled to receive his *Miranda* warnings; for example, an individual that is "handcuffed and placed in the back

seat of a squad car" is in the custody of the police, and therefore entitled to receive his *Miranda* warnings. *United States v. Henley*, 984 F.2d 1040, 1042 (9th Cir. 1993).

The circumstances of this case indicate that Blatchford was arrested in his bedroom. The police entered his bedroom at approximately 2:45 in the morning with the knowledge that he was the only known suspect in this case. They woke him up, and immediately placed him in handcuffs. He was then brought into the living room to speak with officers while dressed in nothing more than his boxer shorts, and eventually he was removed to the officers' squad car for transport to a detention center. Given this treatment, "police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Bostick*, 501 U.S. at 437. Therefore, prior to questioning him, the police should have informed him of his *Miranda* rights.

The government argues that handcuffing an individual does not always transform a detention into an arrest, and cites to various cases where the use of handcuffs was not determinative. However, these cases are distinguishable from the circumstances of the instant case. In *Bautista*, the Ninth Circuit found that the use of handcuffs during a brief *Terry* stop did not transform a detention into an arrest, as the police were entitled to take "take adequate protective measures before remaining with two men suspected of armed bank robbery, particularly when the suspects appeared extremely nervous and suspect Bautista kept pacing back and forth and looking, turning his head back and forth as if he was thinking about running." *Bautista*, 684 F.2d at 1289 (internal quotation omitted). The officers in this case were investigating a violent assault, but they came upon Blatchford while he was asleep, in the middle of the night, with no reason to suspect he was armed. At least one of the officers already discovered the weapon at issue lying in the front seat of the red Chevrolet Cavalier. Furthermore, unlike the detention that occurred during a brief traffic stop in *Haynie*, there was no indication that Blatchford's detention that evening would be temporary. *See Haynie v. Cty. of Los Angeles*, 339 F.3d

1071, 1077 (9th Cir. 2003) (finding that "[t]he fact that Haynie was handcuffed and placed in the rear of a police car for 16 to 20 minutes did not become a de facto arrest").

The government also asserts that even if Blatchford was arrested in his bedroom, his statement regarding the Chevrolet Cavalier should not be suppressed because it was obtained in response to a question aimed at confirming his identity. However, "[w]hen a police officer has reason to know that a suspect's answer may incriminate him . . . even routine questioning may amount to interrogation." *United States v. Henley*, 984 F.2d 1040, 1042 (9th Cir. 1993). This situation is similar to the situation in *United States v. Henley*. The officer in that case asked the suspect if he owned the vehicle in order to ensure that he could grant proper consent to search the vehicle, but he was also well aware that the vehicle in question was used as the get-away car in a bank robbery earlier that evening. *Id.* The police were therefore aware that the suspect's response to whether he owned the car would likely connect him to the bank robbery as well as the evidence obtained in the subsequent search of the vehicle, leading the Ninth Circuit to find that "such statements of ownership may not be admitted into evidence where police should have known that the response was likely to incriminate the defendant, unless, of course, *Miranda* warnings were first given." *Id.* at 1044.

While it may be that the officer questioned Blatchford about the car with the intent of confirming Blatchford's identity, the red Chevrolet Cavalier was central to the altercation that led to the victim's injuries in this case, as well as linking Blatchford to the bandana and the hammer previously observed inside the vehicle. Therefore, the police in this case had reason to know and should have known that Blatchford's response to the questions regarding the Cavalier may incriminate him, and should not have asked him about his ties to the vehicle without first reading him his *Miranda* rights. "Statements obtained in violation of *Miranda* may not be admitted against the accused, at least in the prosecution's case in chief." *United States v. Patterson,* 812 F.2d 1188, 1193 (9th Cir.1987). Therefore, Blatchford's statements made to the police regarding his ownership of the Cavalier are suppressed.

**B. Warrantless Searches and Seizures**

"Searches conducted without a warrant, thus, 'are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). The burden is on the government to establish that a warrantless search falls into one of the exceptions to this general rule. *Id.*

**1.     The Curtilage of Blatchford's Grandmother's Home**

[A] person claiming a Fourth Amendment violation must, as an initial matter, demonstrate a 'legitimate expectation of privacy' in the place searched or the thing seized." *United States v. Gamez-Orduno*, 235 F.3d 453, 458 (9th Cir. 2000). "An overnight guest in another's home has a reasonable expectation of privacy for purposes of Fourth Amendment standing." *Id.* The government asserts that Blatchford did not have a legitimate expectation of privacy in his grandmother's home because he did not appear to be an invited guest or resident, as his grandmother denied that he was in her home that evening. However, the police went to his grandmother's home that evening based on the account of witnesses that informed them that Blatchford lived with his grandmother. Indeed, the entirety of the government's argument in Counts III and IV of this case is premised on the argument that Blatchford is a semi-permanent resident of his mother's and grandmother's homes. Blatchford was, at minimum, an overnight guest in his grandmother's home, if not a semi-permanent resident. Therefore, Blatchford did have a legitimate expectation of privacy in her home as well as her curtilage. *See Minnesota v. Olson*, 495 U.S. 91, 96–97 (1990) (finding that defendant's establishment that he was an "overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable").[4]

---

[4] Neither party argues that the area where the vehicle was found, in between Mrs. Blatchford's home and the shed on her property, was part of the curtilage of Mrs. Blatchford's home. Therefore, the Court assumes, without deciding, that the vehicle was located on the curtilage of Mrs. Blatchford's home, and was thus protected from an unreasonable search under the Fourth Amendment. *See generally United States v. Johnson*, 256 F.3d 895, 901 (9th Cir. 2001) (noting that in an instance where the

A warrantless search may be justified in exigent circumstances, including where there is a "safety risk to officers presented by unsearched premises."[5] *United States v. Furrow*, 229 F.3d 805, 811 (9th Cir. 2000), *overruled on other grounds by United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001). A so-called "protective sweep" of an individual's premises may occur where "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 334 (1990). Therefore, a protective sweep is justified where officers have a "reasonable suspicion of danger." *Id.* at 335. "Reasonable suspicion may arise when officers know an occupant has a weapon, has threatened to use it in an unlawful manner, and may be present in the residence." *United States v. Torres-Castro*, 470 F.3d 992, 998 (10th Cir. 2006).

A protective sweep is "not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found," and should not continue any "longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* at 335–36. Furthermore, protective sweeps are not generally authorized where no arrest is made. *See generally United States v. Reid*, 226 F.3d 1020, 1027 (9th Cir. 2000) (finding that a search could not be considered a protective sweep where 1) the officers did not make an arrest at the scene and 2) the government failed to provide any facts that illustrated there was a reasonable suspicion of danger).

At the time the police arrived at Mrs. Blatchford's home, eyewitnesses told the officers that the suspect lived with his grandmother at the property. Eyewitnesses also

government allegedly searched the curtilage of the defendant's home without a warrant, the government conceded that it had the burden of proof "to show that the search was not within the curtilage of [the defendant's] residence").

[5] Contrary to the government's contentions, the automobile exception does not apply here, as Blatchford is not contesting a search of the red Cavalier. Rather, he is objecting to the officers' decision to come onto his grandmother's land and lift up a tarp covering a car on her property.

told them that the suspect had access to a dangerous weapon, that he engaged in a brutal exchange with the victim that evening and that he could still be inebriated. Blatchford was placed in handcuffs the moment the officers discovered him in the back bedroom.

Given the information available to the officers and the violent nature of the crime, a reasonably prudent officer would be justified in believing that Mrs. Blatchford's home "harbor[ed] an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334. The witnesses also informed the officers that Blatchford left the crime scene driving a red Cavalier. Officer Toddy testified that he could see that the vehicle under the tarp was red, and therefore it was not unreasonable for him to be concerned that Blatchford could still be armed and inside the vehicle at the time the officers arrived at Mrs. Blatchford's home.

Officer Toddy's testimony indicated that his primary motivation in securing the premises and lifting the tarp of the vehicle was to ensure officer safety. The actions he took that evening support this assertion. At no point did Officer Toddy attempt to open the car or get into the car; he briefly looked into it to ascertain if Blatchford was inside and then moved along. Furthermore, Officer Toddy did not just look in the car; he also checked the shed on the property to make sure that Blatchford was not lying in wait there either and he ultimately worked his way to the back door to make sure that Blatchford did not try to escape from that exit. Nothing in the testimony or the police reports indicate that Officer Toddy spent more than a few moments checking these areas, supporting his testimony that his search was brief and focused solely on ensuring that the suspect was not armed and dangerous in any of these locations. Therefore, Officer Toddy's actions fit within the confines of a lawful protective sweep, and thus his discovery of the red Cavalier, as well as the hammer and bandana, is not suppressed.

### 2. The Clothing

"If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." *Horton v. California*, 496 U.S. 128, 133 (1990). Therefore, in certain circumstances, police may seize evidence that is present in plain

view without a warrant.  *Id.*  In order for such a seizure to be proper under the Fourth Amendment, the government must demonstrate that 1) "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed," 2) the officer had "a lawful right of access to the object itself," and 3) the "incriminating character" of the evidence "must also be immediately apparent."  *Id.* at 136.  In the Ninth Circuit, "if facts sufficient to provide probable cause to believe an object is incriminating are immediately apparent to the officer," then the third requirement is met.  *United States v. Chesher*, 678 F.2d 1353, 1357 (9th Cir. 1982).

Officer Toddy's presence in Mrs. Blatchford's spare bedroom that night was proper, as Mrs. Blatchford gave both officers permission to come inside and look for Mr. Blatchford.  Officer Toddy noticed the clothing lying in plain view on the floor, near the bed Mr. Blatchford was sleeping in.  At the same time, he noticed that the clothing matched the description of the suspect's clothing given by the witnesses earlier that evening.[6]  The fact that the clothing matched the description given by the witnesses of the assault provided Officer Toddy with probable cause for his belief that the clothing was incriminating.  Therefore, the seizure of Blatchford's clothing, and the subsequent discovery of the keys within the pockets of that clothing, was authorized under the plain view doctrine, and thus the motion to suppress is denied.[7]

## CONCLUSION

For the foregoing reasons, the evidence obtained by the government through the discovery of the Cavalier and the seizure of Blatchford's clothing will not be suppressed.

---

[6] Officer Toddy also testified that he brought the clothing into the living room because Blatchford was only wearing his boxers at the time of his arrest, and he believed that Blatchford may require clothes to return home in if he was released that evening. However, the fact that Officer Toddy may have had mixed motives when he obtained Blatchford's clothing does not alter the fact that he had probable cause for believing that the clothing was potentially incriminating at the time he obtained it from the bedroom.

[7] The government originally asserted the search incident to arrest and/or the good faith exception should apply in this case.  At oral argument, the government conceded that the search incident to arrest exception was inapplicable to the facts of this case, and thus it will not be discussed here.  Likewise, because the plain view doctrine applies, there is no need to reach whether good faith applies.

However, the statements made by Blatchford regarding his ownership of the Cavalier constituted a violation of his Fifth Amendment rights under *Miranda*, and are suppressed.

**IT IS THEREFORE ORDERED THAT** the Defendant's Motion to Suppress, (Doc. 42), is **GRANTED** in part and **DENIED** in part.

Dated this 8th day of June, 2017.


_G. Murray Snow_
Honorable G. Murray Snow
United States District Judge